IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PRESTON J. BLAKE,

   Petitioner,

vs.             CIV 13-0454 LH/KBM

JAMES JANECKA, Warden, and
GARY K. KING, New Mexico
Attorney General,

   Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on the Order of Reference by the

Honorable C. LeRoy Hansen (*Doc. 4*) filed June 5, 2013, to conduct hearings, if

warranted, including evidentiary hearings, and to perform any legal analysis required to

recommend to the Court an ultimate disposition of this habeas action.

On May 14, 2013, Blake filed his pro se Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus by a Person in State Custody (*Doc. 1*).  Respondents James

Janecka and Gary K. King ("Respondents") filed their Motion to Dismiss (*Doc. 14*),

which was fully briefed on September 17, 2013.  Petitioner Preston Blake ("Blake") then

filed a Motion to Amend his response to the Motion to Dismiss on October 11, 2013

(*Doc. 20*) and a document entitled "Plea in the Interest of Justice" on October 28, 2013

(*Doc. 22*).

The motion to amend offers no detail as to what amendment is sought.

The Court finds that Petitioner was provided ample time in which to respond to the

motion to dismiss, and assures Petitioner that it will comply with its obligation to liberally construe the pro se pleadings and apply the relevant authorities.  Therefore, Petitioner's request for permission to amend the response will be denied.  The Court, having reviewed the submissions of the parties, the relevant law, and being otherwise fully advised, will recommend that Respondents' Motion to Dismiss be granted.

## I. Background Facts and Procedural Posture

On March 28, 2008, 82-year-old Jo Ann Vickers was alone in her home when assailants broke in, shoved her to the floor, kicked her, threatened to kill her, took several pieces of her jewelry, and left her on the floor of her home with a broken hip. *Doc. 12-3* at 7; *Doc. 15* at 2.  Because both her landline and cell phone were destroyed in the attack, Mrs. Vickers was forced to drag herself to her front porch where she began shouting for help.  *Doc. 15* at 2.  Mrs. Vickers cries were eventually heard by Theta Ainsworth, a neighbor, who called 911 and reported to the dispatcher that two individuals had burglarized Mrs. Vickers.  *Id.*  At trial, Mrs. Vickers testified that there were actually three men inside her home during the burglary.  *Id.*

A few days after the burglary, Blake and his step-brother, J.B. Stewart, were attempting to sell diamonds at a pawn shop when the owner identified the diamonds as belonging to Mrs. Vickers.  Blake and Stewart were picked up by police for questioning. *Doc. 15* at 3; *Doc. 12-3* at 21.  While talking to police, Blake agreed to retrieve the diamonds and took the police to his home and showed them where they were located. *Doc. 12-3* at 21.  The house was then secured and a search warrant was obtained.  *Id.* In the course of the search, officers discovered a Crown Royal bag containing "the

majority of Ms. Vickers' jewelry." *Doc. 12-3* at 22 (quoting *Tr. Rec.,*[1] 5/14/09 at 2:06:22).

Blake, Stewart, and a third individual, Joe Zurtuche, were charged with crimes

associated with the burglary at Mrs. Vickers' home.  Stewart accepted a plea deal and

then testified at Blake's trial that the burglary was Blake's idea and that Blake and

Zurtuche entered Ms. Vickers' home while he served simply as their driver.  *Doc. 15* at

4.  Stewart admitted, however, that he entered Ms. Vickers' home at some point after

the initial burglary to look for Blake, who did not return to the car, but he maintained that

he did not otherwise participate in the burglary inside the home.  *Doc. 12-4* at 23.

Immediately after the testimony of the first witness, Theta Ainsworth, Blake's

court-appointed attorney informed the court that Blake wanted appointment of a

substitute attorney.  The Court inquired and determined that trial counsel had no

conflicts, was providing effective representation and that Blake had not shown that

appointment of new counsel was warranted.  At that point, Petitioner indicated that he

instead wanted to represent himself.  *Id.* at 2-3.  The court then conducted a thorough

hearing and concluded that Blake was competent and had made a knowing and

voluntary decision to waive counsel and represent himself.  *Doc. 12-4* at 2-10.

Blake asked for a continuance to prepare for trial, which the court denied.  *Id.*

However, the court ordered the appointed attorney to remain as stand-by counsel.  *Id.*

at 27.  After a three-day trial, the jury convicted Blake of aggravated burglary,

conspiracy to commit aggravated burglary, possession of stolen property, tampering

with evidence, and two counts of attempting to commit a felony in connection with the

home invasion and robbery of Jo Ann Vickers.  *Doc. 12-1*.  With the application of eight-

---

[1] There is no transcript of Blake's trial; rather, the audio of the trial was recorded and preserved on CD, and the Court uses "Tr. Rec." when referencing that recording.

year enhancements based on prior felony convictions, Blake was sentenced to forty-one (41) years minus two days in prison.  *Doc. 12-1* at 1-2.

Blake filed a direct appeal.  The New Mexico Court of Appeals affirmed his conviction, *Doc. 12-4* at 1-26, and the New Mexico Supreme Court denied certiorari, *Doc. 12-7* at 21.  After completing the direct appeal process, Blake filed a *pro se* state habeas petition, *Doc. 12-*4 at 27-46, which the Ninth Judicial District Court denied, *Doc. 12-7* at 1-3, and the New Mexico Supreme Court again denied certiorari, *Doc. 12-8* at 33.  Not finding relief in the state courts, Blake filed the instant Petition.  *Doc. 1.*

## II. Blake's Claims

In his federal Petition *(Doc. 1)*, Blake raises the following claims or grounds ("G.") for relief:

1. Pretrial Errors

    a.  Illegal search and seizure (G.19 at 23)

    b.  Denying request for attorney during questioning, right to "plea the 5th"; and no *Miranda* [*v. Arizona*, 384 U.S. 436 (1966)] warning (G.20 at 24)

    c.  Denying "right" to testify before grand jury (G.23 at 26)

2. Errors by the Trial Court

    a.  Allowing/forcing him to represent himself (G.1 at 5)

    b.  Failing to reinstate counsel (G.21 at 25)

    c.  Continuances violating right to speedy trial (G.2 at 7)

    d.  Denying continuance after forcing him to proceed pro se (G.4 at 10)

    e.   Denying the use of prior inconsistent statements by witnesses (G.9 at 16)

f.  Allowing hearsay testimony as the sole testimony for conviction (G.10 at 17)

g.  Allowing victim's personal jeweler to provide expert testimony as to the value of stolen jewelry (G.1 at 20)

h.  Not allowing him to question jurors (G.8 at 15)

i.  Denying him fully discovery (G.15 at 20)

3.  <u>Errors Involving Jurors</u>

a.  Allowing jurors to saw him in leg restraints and handcuffs (G.18 at 23)

b.  Jurors failing to follow jury instructions (G.22 at 25)

4.  <u>Ineffective Assistance of Counsel Claims</u>

a.  Failing to discuss the case with him prior to trial (G.3 at 8)

b.  Failing to interview co-defendants and witnesses (G.3 at 8)

c.  Refusing to strike "biased" jury panel members with knowledge of the case or who were in some way connected to State or co-defendant (G.3 at 8; G.8 at 15)

d.  Refusing to cross-examine witnesses at trial (G.3 at 8)

e.  Not allowing Plaintiff to take polygraph exam (G.3 at 8; G.11 at 18)

f.  Failing to object to prosecution's continuance requests (G.24 at 27)

g.  Conflict because she previously worked for the district attorney (G.3 at 8)

h.  Failing to investigate and disclose alibi witness (G.7 at 14)

5.  <u>Prosecutorial Misconduct</u>

a.  Knowingly lying to the jury (G.12 at 18)

b.  Bribing, threatening, and giving a lenient sentence to J.B. Stewart in exchange for testifying for the State (G.13 at 19)

6. Trial Court Errors at Sentencing

    a. Cruel and unusual punishment by sentencing Blake to an enhanced 41-year term of imprisonment for a crime he insists he did not commit (G.17 at 22)

    b. Denial of counsel at his sentence hearing (G.17 at 22)

7. Other

    a. Insufficient evidence to support conviction (G.5 at 12)

    b. Cumulative error (G.6 at 13)

    c. Factual innocence (G.16 at 21).

## III. Discussion

### A.  State Court Determinations on State Law Questions

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Therefore, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68. Thus, a habeas petitioner may only obtain habeas relief for an improper state-court determination of state-law if the alleged error was "'so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process.'"  *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002) (quoting *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002)) (bracket in original).  In this case, many of Blake's claims are state-law determinations, and Blake cannot demonstrate the existence of a state-law error, much less a "grossly prejudicial" one.

In Ground 2, Blake alleges that the trial court erroneously continued the trial at the prosecution's request.  Conversely, in Ground 4, Blake asserts that it was error to

<u>not</u> continue the trial at his request after he was "forced" to proceed *pro se*.  As the Defendants point out, "grant or denial of a continuance is within the sound discretion of the trial court," *State v. Salazar*, 2007-NMSC-004, 141 N.M. 148, 150, 152 P.3d 135, 137, and implicates a state procedural rule.  *See* Rule 5-604 NMRA.  Blake contends the prejudice caused by the continuance was that it "assure[d] my alibi witness faded away."  *Doc. 1* at 7.  Later in his petition, Blake states that it was his attorney that turned the alibi witness away, not the length of the continuance.  *Doc. 1* at 14.  Accordingly, Blake cannot establish that the continuance requested by the prosecutor caused him any prejudice.

Similarly, Blake cannot establish that he suffered any prejudice for the court's failure to continue the trial at his request because, as he told the court, "I know my case back-to-front," *Tr. Rec.* 5/13/09 at 3:45:30.  Since Blake articulated that he maintained a full grasp of the evidence in his case, it was not grossly prejudicial for the court to deny his request for a continuance.

In Ground 9, Blake contends that the court erred in denying the introduction of prior inconsistent statements of his co-defendant, Stewart, to "impeach" him.  Like other state-court decisions, "federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence" absent a showing of gross prejudice. *Wilson v. Sirmons*, 536 F.3d 1064, 1101 (10th Cir. 2008), *opinion reinstated sub nom*. *Wilson v. Workman*, 577 F.3d 1284 (10th Cir. 2009) (quoting *Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001)).  Blake points to initial statements made by Stewart to police that he, Blake and Zurtuche had found the diamonds in the alley.  *See Doc. 12-6* at 4-5.  At Blake's trial, Stewart indeed admitted that he first told police that they had

found the diamonds in an alley.  He explained, however, that his initial statement was an effort to avoid implicating him as part of the burglary, and that later he told the police the truth.  *Tr. Rec.* 5/15/9 at 9:45:17 – 9:45:40.  Given Stewart's testimony, it was not grossly prejudicial for the state court to deny Blake's request to introduce this evidence which had already been provided to the jury.

In Ground 10, Blake declares that the trial court erred by "allowing hearsay testimony as sole testimony for conviction."  While Blake does not identify any specific testimony that he claims is "hearsay," it appears that he is referring to the testimony of Stewart, his co-defendant in the case.  Blake does not explain why Stewart's testimony was hearsay or how admitting Stewart's testimony was grossly prejudicial.  "A conviction may stand merely on the uncorroborated testimony of an accomplice."  *United States v. Magallanez*, 408 F.3d 672, 682 (10th Cir. 2005) (citation omitted).  Allowing Stewart's testimony was not error.

In Ground 14, Blake proclaims it was error to allow the victim's personal jeweler to provide expert testimony as to the value of the stolen jewelry.  Contrary to Blake's assertion, the jeweler was neither tendered nor qualified as an expert.  *Tr. Rec.* 5/14/09 at 3:59:03 – 4:22:25.  Moreover, Blake did not object to the jeweler's testimony at trial.  *Id.*  Under the New Mexico rules, any objections to the admissibility of evidence that are not made at the time of trial are waived.  *See* Rule 11-103 NMRA.  Blake's only objection here is that the testimony was "obviously against me and having prejudice."  *Doc. 1* at 20.  Defendants do not have the right to witnesses who are impartial.  Rather, the weight, credibility, and bias of witness testimony are matters determined by the jury.  *See United States v. Magallanez*, 408 F.3d 672, 682 (10th Cir. 2005); *see also Montoya*

8

*v. Sheldon*, 898 F. Supp. 2d 1259, 1274 (D.N.M. 2012).  Blake had the opportunity to cross-examine the jeweler with regard to any bias he may have and did so.  *Tr. Rec.* 5/14/09 at 4:20:25 – 4:22:25.  Under the circumstances, Blake cannot establish that allowing the jeweler's testimony was fundamentally unfair or grossly prejudicial.

In Ground 15, Blake asserts that he was "denied full discovery."  *Doc. 1* at 20-21. The disclosure of discovery is a matter of state procedural rules, and a determination by the state courts with regard to a violation of those rules is a matter of state law that does not implicate the federal Constitution "unless the materials were material and favorable to the defense and the late disclosure sufficiently prejudiced the Applicant so as to deprive him of the fundamental fairness required by the Due Process Clause." *Bahadori v. Milyard*, 2010 WL 3002028 at *13 (D. Colo. July 29, 2010) (*citing Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), *Brady v. Maryland*, 373 U.S. 83 (1963), and *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

Because Blake does not describe the discovery he was entitled to receive but did not, he cannot establish that any non-disclosure was material and favorable to the defense or that he was prejudiced by it.  In fact, contrary to his assertion that he was not provided discovery, he explained to the trial court "I've been through my discovery back-to-front several times."  *Tr. Rec.* 5/13/09 at 3:47:34.  Accordingly Blake cannot establish that the state court erred by denying him discovery.

Since Blake cannot establish that the state trial court committed any errors that were so grossly prejudicial as to fatally infect the trial and deny him fundamental fairness, he cannot obtain habeas relief based on these claims.

### B. Federal Habeas Claims under the AEDPA

Federal Courts have statutory authority under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), to issue habeas corpus relief for persons in state custody. *Harrington v. Richter*, 131 S. Ct. 770, 783 (2011). "ADEPA circumscribes our review of federal habeas claims that were adjudicated on the merits in state-court proceedings." *Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012). ADEPA does not require that a state court provide a statement of reasons. "The statute refers only to a 'decision,' which resulted from an 'adjudication.'" *Harrington*, 131 S. Ct at 784. Therefore, even if the state court failed to provide an opinion stating its reasoning, as long as the state court has made a determination on the merits, § 2254(d) bars relitigation of that claim in federal habeas action. *Id.*

Under the ADEPA, this Court may only grant relief where a petitioner demonstrates that the trial court's resolution of his claims was "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hooks*, 689 F.3d at 1163 (quoting 28 U.S.C. §§ 2254(d)(1) & (d)(2)). In this two-step inquiry, the threshold question is whether the applicant is seeking to invoke a rule of federal law that is clearly established by the Supreme Court at the time the conviction became final. *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011); *see also Williams v. Taylor* 529 U.S. 362, 390 (2000). If the law was clearly established, then the court determines whether the state court decision is "contrary to or involved an unreasonable application

of that clearly established law." *Byrd*, 645 F.3d at 1165 (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004)).

A state court decision is "contrary to" clearly established law ""if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts."  *Hooks*, 689 F.3d at 1163 (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  "A state-court decision is an 'unreasonable application" of clearly established federal law when the state court "identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case.'"  *Id.*  (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). In analyzing the state court's decision, this Court may only review the record that was before the state court and all factual findings are presumed correct unless rebutted by "clear and convincing evidence."  *Id.*  (quoting 28 U.S.C. § 2254(e)(1)).

AEDPA precludes this Court from issuing a writ "simply because we conclude in our independent judgment that the state court applied the law erroneously or incorrectly."  *Byrd*, 645 F.3d at 1166.  Instead, the state court's application of federal law must be "objectively unreasonable."  *Id.*  As long as "fairminded jurists could disagree" as to the correctness of the state court's determination, *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004), this "'highly deferential standard for evaluating state-court rulings [ ] … demands that state-court decisions be given the benefit of the doubt."  *Hooks*, 689 F.3d at 1163 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)) (brackets in original).

For federal habeas claims not adjudicated on the merits in the state courts, the

Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).  Here, however, all of Blake's federal claims have each been adjudicated on the merits either on direct appeal or in his state habeas petition.  In summarily denying Blake's petitions for certiorari both on direct appeal and on the state court's denial of habeas relief, the New Mexico Supreme Court expressly noted that it had "considered said petition" and was "sufficiently advised."  *Doc. 12-4* at 42 and *Doc. 12-8* at 33.  Accordingly, this Court will only determine whether the decisions of the state courts are contrary to established Supreme Court law.

1. Illegal Search and Seizure

In Ground 19, Blake states that he was subject to an illegal search and seizure, which implicates the Fourth Amendment.  The state courts dismissed Blake's direct appeal and habeas petition without specifically addressing the Fourth Amendment claim that was raised in both.  *Doc. 12*-7 at 1-3; *Doc. 12-8*.  The state court's decision to dismiss the Blake's Fourth Amendment claim was not contrary to established Supreme Court law.

"The Fourth Amendment protects persons against unreasonable searches and seizures."  *United States v. Lee Vang Lor*, 706 F.3d 1252, 1257 (10th Cir. 2013) *cert. denied*, 134 S. Ct. 679 (U.S. 2013) (citing U.S. CONST.  amend. IV). It is well established that the "Supreme Court has enforced the Fourth Amendment through the exclusionary rule. . . ."  *Id.*  The crux of the exclusionary rule is that evidence obtained in violation of the Fourth Amendment should be excluded at trial.  *Stone v. Powell*, 428 U.S. 465, 492, 96 S. Ct. 3037, 3051(1976) ("Evidence obtained by police officers in

violation of the Fourth Amendment is excluded at trial in the hope that the frequency of future violations will decrease.").

Blake does not allege that there was any evidence introduced at his trial that was the product of an illegal search.  In his state court habeas petition, Blake alleged that "[p]olice entered dwelling prior to search warrant to collect evidence.  Officer touched and searched 'crime scene,' as well as detained people in home prior to search." *Doc. 12-5* at 24.  However, the record establishes that Blake volunteered to take the police to his home and there retrieved for them the diamonds.  *Tr. Rec.*, 5/15/2009 at 1:34:00 – 1:34:40; 1:36:20 – 1:36:30.  If somehow that encounter could be found to constitute a search, "[s]earches conducted pursuant to consent constitute one exception to the Fourth Amendment's search warrant and probable-cause requirements."  *United States v. Alabi*, No. CR 11-2292 JB, 2013 WL 2284956 (D.N.M. May 15, 2013) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).  "When an individual consents to a police search, and the consent is 'freely and voluntarily given,' the search does not implicate the Fourth Amendment."  *Id.*  (citing *United States v. Pena*, 143 F.3d 1363, 1366 (10th Cir. 1998) (quoting *Schneckloth*, 412 U.S. at 219)).

It is also undisputed that the police found the majority of Ms. Vickers' jewelry located within a Royal Crown bag pursuant to a search warrant issued upon a finding of probable cause later that day.  *Tr. Rec.* 5/14/09 at 2:06:22 – 2:06:47.  Since the evidence used to convict Blake was found either during a consensual search or the execution of a warrant, the state court's decision to deny relief based on Blake's Fourth Amendment claim was neither contrary to established law nor an unreasonable application of the law.

2.  Denial of an Attorney during Questioning and Miranda Warnings

Blake contends that when he was being questioned by police, he was not advised of his *Miranda* rights, was denied the right to an attorney when he requested one, and was denied his right to "plea the 5[th.]"  *Doc. 1* at 3, 24.  "The Self–Incrimination Clause of the Fifth Amendment guarantees that no person 'shall be compelled in any criminal case to be a witness against himself.'"  *Withrow v. Williams*, 507 U.S. 680, 688, (1993) (quoting U.S. CONST. amend. V).  The Clause bars the introduction of involuntary confessions made during a custodial interrogation and is applicable to state cases under the Fourteenth Amendment's due process clause.  *Id.* (citations omitted). The now-familiar measures proscribed by *Miranda* safeguard a defendant's Fifth Amendment rights during the process of in-custody interrogation.[2]  If the prosecution cannot demonstrate the warnings and waiver, it may not overcome an objection that statements obtained from the person during a custodial interrogation may not be used at trial.  *Withrow,* 507 U.S. at 690.

However, Blake fails to identify any statement he made during questioning that was used by the prosecution to secure his conviction.  Since Blake has not demonstrated that the prosecution introduced an involuntary confession or statement made in violation of his Fifth Amendment rights, the state court did not act contrary to clearly established law and did not unreasonably apply the law when it denied relief on this basis.

---

[2] A person must be warned "prior to questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation.  After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement.'"  *Withrow*, 507 U.S. at 689-90 (quoting *Miranda*, 384 U.S. at 478 - 79).

### 3.  Denied "Right" to Testify Before the Grand Jury

Blake alleges that he was denied the right to appear and testify before the grand jury despite notifying his attorney of his desire to do so.  *Doc. 1* at 26.  Simply put, there is no federal constitutional right to testify before a grand jury.  *See Elliott v. Martinez*, 675 F.3d at 1241 (2012) (holding that New Mexico state statute requiring notification to a target of a grand-jury investigation that they have the right to testify does not create a liberty interest in the procedure; noncompliance with the procedure, therefore, does not violate the Due Process Clause).  Since this claim does not seek to invoke a rule of law that is clearly established by the Supreme Court, it is barred in this habeas petition. [3]

### 4.  Waiver of Right to Counsel

"[I]n addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial."  *United States v. Wade*, 388 U.S. 218, 226 (1967).  Yet the Sixth Amendment of the United States Constitution guarantees a criminal defendant not only the right to counsel in criminal proceedings, but also the right to give up counsel and conduct his own defense.  *Faretta v. California*, 422 U.S. 806, 818-19 (1975);  *Montoya v. Romero*, 12 F. App'x 649, 652 (10th Cir. 2001), *citing United States v. Hughes*, 191

---

[3] To the extent Blake is claiming a right to testify at the grand jury hearing was an error under New Mexico state law, this claim fails because a jury has already convicted him of the crimes charged.

> The grand jury only makes a finding of probable cause.  A defendant should not be required to face a trial in the absence of probable cause.  But at a trial on the merits, the State has the obligation to prove not just probable cause but guilt beyond a reasonable doubt.  Like difficulties with the quality or type of evidence relied upon by the grand jury in returning an indictment, *any question of probable cause is necessarily obviated by a finding of guilt.*

*State v. Gallegos*, 2009-NMSC-017, 146 N.M. 88, 94, 206 P.3d 993 (quoting *State v. Ulibarri*, 2000-NMSC-007, ¶ 2, 128 N.M. 686, 997 P.2d 818) (emphasis in original).

F.3d 1317, 1323 (10th Cir.1999).  However, "in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits."  *Faretta,* 422 U.S. at 819.  Consequently, "[a] determination of whether a defendant's waiver of counsel is valid involves a two-step inquiry.  First, the court must determine whether the defendant's waiver was voluntary.  Second, we must ask whether the waiver was made knowingly and intelligently."  *Montoya,* 12 F. App'x at 652 (citing *United States v. Taylor,* 113 F.3d 1136, 1140 (10th Cir. 1997)).

### a. Blake Voluntarily Waived his Right to Counsel

Whether a defendant's waiver of counsel is voluntary depends on "whether the defendant's objections to his counsel are such that he has a right to new counsel." *Taylor*, 113 F.3d at 1140 (citing *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir. 1987)).

> [F]or the waiver to be voluntary, this court must be confident the defendant is not forced to make a "choice" between incompetent counsel or appearing pro se.  However, "***refusal without good cause to proceed with able appointed counsel is a 'voluntary' waiver***."  Thus, unless a defendant establishes good cause entitling him to the appointment of new counsel, the defendant's decision to waive counsel will be deemed voluntary.

*Id.* (emphasis added) (citations omitted).  "Good cause" may include a "conflict of interest, a complete breakdown of communication, or an irreconcilable conflict which leads to an unjust verdict."  *Padilla,* 819 F.2d at 955 (quoting *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981), *cert. denied*, 456 U.S. 917 (1982)).  "However, a lawyer's decision, in the exercise of his or her legal judgment, not to pursue a certain line of defense desired by the defendant does not constitute good cause."  *Rocha v. Price*, 51 F.3d 286 (10th Cir. 1995) (unpublished) (citing *Sanchez v. Mondragon*, 858 F.2d 1462,

1466 (10th Cir.1988)).  "The right to counsel does not require that counsel blindly follow a defendant's instructions."  *Id.*  (citing *Padilla*, 819 F.2d at 956).

Blake dismissed his counsel after cross-examination of the first witness, Ms. Ainsworth.  Blake explained to the court that he was displeased with how his attorney was conducting his defense.  He complained that his counsel failed to question Ms. Ainsworth as to her statement to 911 dispatch that there were two, rather than three, assailants who invaded Ms. Vickers' home.  *Tr. Rec.*, 5/13/09, 3:43:00 – 3:44:29.  Blake believed Ms. Ainsworth's statements to 911 would help him establish that he was not involved in the burglary.  *Id.*

Blake further alleged that his counsel refused to discuss his case with him and did not interview co-defendants or witnesses.  *Id.* at 3:44:47 – 3:45:43; 3:46:29 – 3:46:47.  Blake's counsel responded that she met with Blake for forty-five minutes prior to trial and at least five times in total.  *Doc. 12-4* at 5.  Counsel explained that she had contacted attorneys representing Blake's co-defendants.  She had interviewed one of the co-defendants and provided Blake with the information from that interview.  *Id.*  The attorney for the other co-defendant advised that since his client maintained he was not at the scene of the crime, he had no information to offer.  *Id.*

Counsel further explained to the court that she had done extensive work on Blake's case over the course of her representation, pursued every defense available, and was prepared to go forward with trial.  *Id.*  Based on counsel's explanations, the trial court found that Blake failed demonstrate that he was entitled to substitute counsel.  *Id.*

Clearly, the trial court was in the best position to determine the weight and credibility of counsel's statements regarding her efforts during the course of her

representation. In the absence of clear and convincing evidence to the contrary, this Court defers to the state court's factual findings that "trial counsel rebutted [Blake's] contentions regarding her lack of preparation and failure to pursue defenses," *Doc. 12-4* at 6, and that "all of the arguments [Blake] made about his counsel's ineffective performance proved to be baseless." *Doc. 12-4* at 6. Therefore, it was a reasonable application of the law for the state court to determine that Blake's decision to waive his right to counsel was voluntary as he did not establish good cause for appointment of substitute counsel.

> b. Blake Knowingly and Intelligently Chose to Represent Himself

In determining whether Blake knowingly and intelligently waived his right to counsel, the Court looks to the record and the entire circumstances of the case, including Blake's age and education, his previous experience with criminal trials, and his background, experience, and conduct. *Montoya*, 12 F. App'x at 652 (citing both *Taylor*, 113 F.3d at 1140 and *Faretta v. California*, 422 U.S. 806, 835 (1975)).

> Ideally, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding *pro se*.

*United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir.1991). The record should establish the defendant has a sense of the magnitude of the undertaking and the inherent hazards of self-representation at the time of his decision to proceed *pro se*. *Taylor*, 113 F.3d at 1141.

In this case, once the trial court was made aware that Blake intended to proceed *pro se*, it stopped the trial and held a hearing. During this hearing, the trial court asked

Blake about his knowledge and understanding of the decision to proceed *pro se*.  In response to inquiries from the court, Blake acknowledged that he understood there are certain pitfalls in representing himself and that he would be required to abide by the same evidentiary rules and rules of the court as the attorneys in the case.  *Tr. Rec.*, 5/13/ 09 3:46:50 -3:47:17.  While Blake explained that he did not know what the rules were, he said "I know enough to know when there are crucial points to be made in my case."  *Id.* at 3:46:20-26.

The court asked Blake about his age, education, and experience with the criminal system.  *Tr. Rec.* 5/13/09 4:20:24 – 32; 4:20:40 – 4:21:40.  Blake agreed he was aware of all of the charges against him and the penalties he was facing and recited them for the court.  *Id.* at 4:33:02 – 4:34:46; 4:37:13 – 4:37:25.  The court made Blake aware of any potential fines.  *Id.* at 4:34:47 – 4:35:30.  Blake expressed he was similarly aware that, because of his prior felony convictions, he could be facing an eight-year enhancement for each of the charges.  *Id.* at 4:35:30 – 4:36:00.

Blake understood that his effectiveness would be diminished by his lack of knowledge of the law, *id.* at 4:21:55 – 4:22:30, that "presenting a defense is more than just telling your story," and that he had to adhere to the rules and comply with them.  *Id.* at  4:22:30 – 4:23:05.  Blake acknowledged that the prosecution had two trained and experienced attorneys presenting the state's case and that he was abandoning a trained attorney to present his case.  *Id.* at 4:23:19 – 4:23:37.  Finally, Blake understood that being unfamiliar with legal procedures and rules would place him at a disadvantage and that he may permanently lose defenses or other rights by not having counsel.  *Id.* at

4:24:25 – 4:25:05.  Blake told the court that while he did not know the rules, "I'm pretty sure I can do it."  *Id.* at 4:23:10 – 4:23:15.

The trial court expressed concern that Blake's lack of knowledge of the rules called into question his competency to represent himself,  *Tr. Rec.* 5/13/07 4:25:14 – 4:25:20; however, whether a defendant has the technical knowledge, competency, and skill of an attorney is irrelevant to the determination of his competency to waive his right to counsel.  *Godinez v. Moran*, 509 U.S. 389, 400 (1993); *Faretta*, 422 U.S. at 836. "Thus, while '[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts,' a criminal defendant's ability to represent himself has no bearing upon his competence to choose self-representation." *State v. Reyes*, *2005-NMCA-080*, 137 N.M. 727, 731 (quoting *Faretta*, 422 U.S. at 834).

The record demonstrates that Blake was aware of the nature of the charges, the range of allowable punishments and possible defenses, and was fully informed of the risks of proceeding pro se.  Thus, the state court's determination that Blake intelligently and knowingly waived his right to counsel was not contrary to established law and not an unreasonable application of the law.

Blake further contends that the trial court erred in failing to reinstate counsel. *Doc. 1* at 25.  A trial court may terminate a person's self-representation if they deliberately engage in "serious and obstructionist misconduct."  *U.S. v. Wallace*, 527 F. App'x. 784, 786 (10th Cir. 2013) (unpublished) (quoting *Faretta*, 422 U.S. at 834 n.46). However, "trial courts should not force unwanted counsel upon defendants who knowingly and voluntarily assert the right to self-representation."  *Id.* at 787 (citing

*Faretta*, 422 U.S. at 834).  The record is devoid of any instance where Blake engaged in "serious and obstructionist misconduct;" therefore, there was no reason for the trial court to reinstate counsel after finding Blake had properly waived that right. Moreover, Blake was provided with standby counsel had he needed to consult.  Denial of habeas relief on the basis of Blake's waiver of counsel and decision to conduct his own defense was neither contrary to established law nor an unreasonable application of the law.

       5.  <u>Errors Involving Jurors</u>

Blake maintains that the jury was prejudiced by seeing him in leg restraints and handcuffs.  *Doc. 1* at 23.  "The Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial."  *Deck v. Missouri*, 544 U.S. 622, 629 (2005).  Blake contends that the jury saw him in restraints in the parking lot and in the elevator.  *Doc. 12-2* at 11.  Blake additionally asserts that when he sat or stood in court, his leg restraint would make a loud "click," which would draw the jury's attention.  *Id.*  As Defendants point out, however, there is absolutely no indication that Blake was ever visibly restrained with shackles and handcuffs in the courtroom, during the trial proceedings.  *Doc. 15* at 19-20.

Moreover, "[i]n itself, a juror's brief view of a defendant in shackles does not qualify as a due process violation worthy of a new trial."  *United States v. Jones*, 468 F.3d 704, 709 (10th Cir. 2006) (citations omitted*).  In order to establish a violation of due process, Blake bears the burden to show that viewing him in shackles resulted in prejudice, which he has failed to do.  *Id.*

Even if Blake's allegations did amount to a violation of due process, "the harmless-error doctrine is applicable to this line of cases." *Estelle v. Williams*, 425 U.S. 501, 506  (1976).  Under this doctrine, "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Id.*  (quoting *Chapman v. California*, 386 U.S. 18, 21-22 (1967)).  Blake was not in visible restraints during the court proceedings and there is no evidence that any juror was so distracted by the alleged "clicking" sound that it influenced the verdict.  Therefore, it was not an unreasonable application of the law for the state courts to determine that even if the jury noticed Blake's restraints, in light of the extent of the evidence against him, it was harmless.

Blake next contends that the jury did not follow the instruction that the verdict should not be based on speculation, guess, or conjecture.  *Doc. 1* at 25.  Juries are ordinarily presumed to follow the court's instructions.  *See Simmons v. S. Carolina*, 512 U.S. 154, 171 (1994);  *Shannon v. United States*, 512 U.S. 573, 574, (1994).  Blake argued to the state courts that "the verdict was based on hearsay evidence given from a person who had motive to lie."  *Doc. 12-5* at 25.  That the jury believed other witnesses' testimony over Blake's testimony is not evidence that they based their verdict on speculation, guess, or conjecture, however.  "The jury apparently believed the witnesses and that is the end of the matter."  *Magallanez,* 408 F.3d at 682.  Again, it was not contrary to established law or an unreasonable application of the law for the state courts to have denied Blake habeas relief on this basis.

6. Ineffective Assistance of Counsel

The Sixth Amendment provides for the right to the assistance of counsel in order to "protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). "[T]he right to counsel is the right to the effective assistance of counsel." *Id.* (citation and quotations omitted). Blake asserts several instances of the ineffectiveness of his trial counsel. *Doc. 1* at 8, 14, 15, & 27. "To prevail on an ineffective assistance of counsel claim under *Strickland*, a petitioner must show: (1) 'counsel's performance was deficient' and (2) 'the deficient performance prejudiced the defense." *Crawley v. Dinwiddie*, 584 F.3d 916, 922 (10th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

*Strickland* demands that the defendant establish that the attorney's "representation fell below an objective standard of reasonableness" with a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial." *Williams v. Taylor*, 529 U.S. 362, 390 (2000) (quoting *Strickland* 466 U.S. at 687). The Court must give "considerable deference to an attorney's strategic decisions" and "'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Strickland*, 466 U.S. at 690 (quoted in *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002).

However, "[t]he court need not address whether counsel's performance was deficient if defendant fails to prove actual prejudice. Prejudice is shown if defendant establishes a reasonable probability that the outcome of the trial, sentencing, or appeal would have been different had counsel raised the omitted claim or argument." *United States v. Hill*, No. CR-05-111-L, 2009 WL 1531533 (W.D. Okla. June 1, 2009) (citing

*Neil v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001), *cert. denied*, 537 U.S. 835 (2002)).

"Moreover, when evaluating an ineffective assistance of counsel claim under § 2254(d)(1), [a federal court's] review is 'doubly deferential.'" *Crawley*, 584 F.3d at 922 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Court "defers to the state court's determination that counsel's performance was not deficient and, further, defers to the attorney's decision in how best to represent a client." *See id.* (citing Knowles, *supra* and *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*)). In *Knowles*, the Supreme Court explained:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold. And because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* (quoting *Knowles*, 129 S. Ct. at 1420); *see also Yarborough*, 541 U.S. at 664 ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

As noted above, the state court found that Blake's counsel "rebutted [Blake's] contentions regarding her lack of preparation and failure to pursue defenses," *Doc. 12-4* at 6, and "made a valid tactical decision not to use [Blake]'s proposed alibi witness," *Doc. 12-7* at 2. Indeed, the proffered testimony of the alibi witness directly contradicts Blake's own testimony that he at his home the night of the burglary. *See* Unsworn Statement of Candice Owens (stating that she was with Blake and his children at a hotel from 10:00 that evening until 5:00 the next morning). The Court finds that Blake has not produced clear and convincing evidence that sufficiently rebuts these factual findings;

24

therefore, they are presumed correct and cannot be the basis for his ineffective assistance claim.

Further, Blake cannot establish that his attorney was deficient for failing to strike allegedly biased jury panel members. "The Sixth Amendment right to an impartial jury and the due process right to a fundamentally fair trial guarantee to criminal defendants a trial in which jurors set aside preconceptions, disregard extrajudicial influences, and decide guilt or innocence 'based on the evidence presented in court.'" *Skilling v. United States*, 561 U.S. 358, 130 S. Ct. 2896, 2948 (2010) (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)). "[T]he Constitution presupposes that a jury selected from a fair cross section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." *Lockhart v. McCree*, 476 U.S. 162, 184 (1986). When members of the jury are not removable for cause, the jury is deemed impartial for Sixth Amendment purposes. *Rivera v. Illinois*, 556 U.S. 148, 159 (2009). "[W]hether particular jurors can be impartial is a question of fact that we must afford a presumption of correctness." *Goss v. Nelson*, 439 F.3d 621, 633 (10th Cir. 2006).

The state court determined that counsel was not ineffective during voir dire. *Doc. 12-4* at 17 and *Doc. 12-7* at 3. The single statement made by the prospective juror (who did not serve on the jury) that his grandson was "involved" with Blake should not have tainted the jury, and the state court's finding to that effect is reasonable. Blake has no evidence that any of the jurors were removable for cause. Accordingly, this Court must defer to the state court's determination that the jurors were impartial.

Finally, even if counsel had performed all of the tasks that Blake alleges she omitted, he cannot establish that there is a reasonable probability that the outcome of the trial would have been different.  Blake voluntarily and knowingly waived his right to counsel the first day of a three-day trial.  "A defendant who chooses to represent himself and has the assistance of court appointed standby counsel cannot succeed in establishing ineffective assistance against such counsel when it is clear that the defendant maintained control of his defense."  *Lee v. Hines*, 125 F. App'x 215 (10th Cir. 2004).  Blake has not established that it was his counsel's pre-trial efforts, as opposed to his own self-representation or the evidence against him, which resulted in the unfavorable outcome.  Blake, therefore, fails to establish that he was actually prejudiced by his counsel's alleged failures.

7.  Prosecutorial Misconduct

Blake contends that prosecutors knowingly lied to the jury by telling them that Stewart never lied about his version of events and that the prosecutor "bribed and threatened [Stewart] in exchange for his testimony."  *Doc. 1* at 18 and 19.  "To prevail on a claim based on improper remarks by the prosecutor, a petitioner generally must demonstrate that the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Bland v. Sirmons*, 459 F.3d 999, 1014 (10th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L.Ed.2d 431 (1974)).

The record reveals that the prosecutor emphasized the court's instruction to the jury that they are the judges of the witnesses' credibility and can consider any motivation a witness may have to lie.  *Tr. Rec.* 5/15/09 at 2:29:04 – 2:29:53.  "The jury is

presumed to follow its instructions, even when there has been misleading argument."
*Bland*, 459 F.3d at 1015 (citing *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Boyde v. California*, 494 U.S. 370, 384 (1990), and *Lingar v. Bowersox*, 176 F.3d 453, 460-61 (8th Cir.1999) ("When counsel misstates the law, the misstatement is harmless error if the court properly instructs the jury on that point of law or instructs that the attorneys' statements and arguments are not evidence.")).

In stating that Stewart had no motivation to lie at trial and that his story was consistent, the prosecutor did not misstate the law.  Rather, he was arguing as to why the jury ought to believe that Stewart was a credible witness.  Thus, the prosecution's remarks did not infect the trial with unfairness that resulted in a denial of Blake's due process rights.  *See Bland*, 459 F.3d at 1015; *see also Boyde*, 494 U.S. at 384 (explaining that "arguments of counsel generally carry less weight with a jury than do instructions from the court").

Additionally, no evidence supports Blake's allegation that Stewart was either threatened or bribed for his testimony.  The jury had before it Stewart's plea agreement and judgment, neither of which stated that Stewart was compelled to testify or that his plea agreement was done in exchange for testimony.  *Tr. Rec.*, 5/15/09 at 10:57:23 – 10:58:17;  2:30:44 – 2:31:12.  Stewart testified that he was not offered a plea deal for his testimony or given a lighter sentence for his testimony.  *Tr. Rec.*, 5/15/09 at 10:57:23 – 10:58:17.  As there was no evidence of prosecutorial misconduct in this regard, it was not contrary to law or an unreasonable application of the law for the state courts to determine that Blake's claims for prosecutorial misconduct were without merit.

8. Claims of Improper Sentencing

Blake contends that the trial court erred by using the eight-year enhancement and by denying him counsel at sentencing. *Doc. 1* at 22. "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20, (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-997 (1991)). In *Ewing*, the Supreme Court noted that

> this Court "has on occasion stated that the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." But "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."

*Id.* at 21 (quoting *Rummel v. Estelle*, 445 U.S. 263, 271 (1980)).

Moreover, "[r]ecidivism has long been recognized as a legitimate basis for increased punishment." *Id.* at 25 (citations omitted). Under New Mexico's recidivism statute, each of Blake's individual felony sentences in this case was enhanced by eight years. NMSA 1978, § 31-18-17(C).[4]. "A sentence within the statutory limits is not cruel and unusual punishment. Absent a showing of illegality or abuse of discretion, such a sentence will not be disturbed on appeal." *United States v. MacClain*, 501 F.2d 1006, 1013 (10th Cir.1974) (citations omitted). Blake's sentence does not go beyond the statutory limits, and he has not established illegality or abuse of discretion. The state

---

[4] "A person convicted of a noncapital felony in this state whether within the Criminal Code or the Controlled Substances Act or not who has incurred three or more prior felony convictions that were parts of separate transactions or occurrences or conditional discharge under Section 31-20-13 NMSA 1978 is a habitual offender and his basic sentence shall be increased by eight years. The sentence imposed by this subsection shall not be suspended or deferred."

court appropriately determined that sentence imposed by the trial court did not violate Blake's Eighth Amendment rights.

### 9. <u>Substantial Evidence</u>

The critical inquiry in determining whether there is sufficient evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted).  Because this is a federal habeas proceeding and the state courts have resolved Blake's challenge to the sufficiency of evidence on the merits, AEDPA "adds an additional degree of deference," and the question becomes whether the state court's conclusion that the evidence was sufficient "constituted an unreasonable application of the *Jackson* standard."  *Hooks*, 689 F.3d at 1166 (quoting *Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir.2007) (other citations omitted); *see also Coleman v. Johnson*, ___ U.S.___, 132 S. Ct. 2060, 2062 (2012) (*per curium*) *reh'g denied*, 133 S. Ct. 74 (2012)).

In its opinion on direct appeal, the state court of appeals explained that there was sufficient evidence, including eye-witness testimony, that Blake had entered the victim's house and was in actual possession of jewelry stolen in the burglary.  *Doc. 12-4* at 23. Further, viewing the evidence in the light most favorable to the verdict, the state court determined the tampering with evidence charge and receiving stolen property charge were supported by eyewitness testimony, if believed, that described Blake "attempting to sell loose diamonds extracted from the victim's jewelry settings to a jewelry store and pawn shop."  *Id.* at 24-25.  This Court agrees with the findings in the state court that any rational trier of fact could have found the essential elements of the crimes beyond a

reasonable doubt.  Thus, it was not an unreasonable application of the *Jackson* standard for the state court to find the evidence was sufficient to support the conviction.

### 10.   Cumulative Error

"A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  *Hooks*, 689 F.3d at 1194-95 (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1206 (10th Cir. 2003)) (internal quotation marks omitted).  However, "[c]umulative-error analysis applies where there are two or more actual errors.  It does not apply . . . to the cumulative effect of non-errors."  *Id.* (quoting *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir.1999)) (internal quotation marks omitted).  Because Blake failed to demonstrate even a single error warranting habeas relief, the Court need not inquire further  *See United States v. Franklin–El*, 555 F.3d 1115, 1128 (10th Cir.2009) ("Here, Defendant has failed to establish the existence of multiple errors.  Thus, we refrain from engaging in a cumulative error analysis.").

## IV. Conclusion

Since this Court finds that Blake's claims are either not cognizable in this federal habeas action or are not contrary to, or an unreasonable application of, clearly established federal law,

IT IS HEREBY RECOMMENDED that Petitioner's Motion to Amend his response to the Motion to Dismiss (*Doc. 20*) and "Plea in the Interest of Justice" (*Doc. 22*) be denied.

IT IS FURTHER RECOMMENDED that Respondent's Motion to Dismiss (*Doc. 14*) be granted and Blake's Petition (*Doc. 1*) be dismissed with prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES CHIEF MAGISTRATE JUDGE